UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BLAKE RIAD-JAMES MASO,<br><br>　　　　　　Defendant. | CASE NO. 2:23-cv-01620-TL<br><br>ORDER ON MOTION<br>FOR TEMPORARY<br>RESTRAINING ORDER |

This matter is before the Court on Plaintiff Jane Doe's Motion for Temporary Restraining Order and Order to Show Cause. Dkt. No. 26. Having reviewed the relevant record, the Court DENIES the motion.

## I.　BACKGROUND

### A.　Factual Background

The Court recites the allegations as pleaded in the Complaint. *See* Dkt. No. 8.

Plaintiff is an individual who resides in Seattle, Washington. *Id.* ¶ 3. Defendant Blake Riad-James Maso is an individual who resides in Dallas, Texas. *Id.* ¶ 4.

1  In 2017, Texas police began investigating Defendant for aggravated sexual assault
2  against Plaintiff. *Id.* ¶ 11. That same year, Plaintiff filed a domestic violence action in California.
3  *Id.* ¶ 12. Plaintiff also filed to terminate Defendant's parental rights to her child, born that year.
4  *Id.* ¶¶ 12, 15.
5  In January 2018, Defendant "attempted to fraudulently and voluntarily" put Plaintiff's
6  daughter in foster care in Texas. *Id.* ¶¶ 16–17. However, on January 26, 2018, a Texas state court
7  ordered that Plaintiff's daughter be returned to her. *Id.* ¶ 17; *see also* Dkt. No. 9 at 15 (court
8  order). Defendant "continued making threats to put Plaintiff's 'bastard child up for adoption' and
9  death threats." *Id.* ¶ 18. Defendant also provided a "fraudulent" affidavit to a Texas court where
10 he obtained a default judgment (later invalidated) terminating the parental rights of both him and
11 Plaintiff. *Id.* ¶¶ 19, 21. Since then, Defendant and his agents and family members have
12 demanded that Plaintiff "keep her mouth shut if she ever wants to see her daughter and her
13 nephew alive again." *Id.* ¶ 20.
14 At some point, Defendant discovered that Plaintiff had been cooperating with authorities.
15 *Id.* ¶ 22. Defendant posted or caused the posting of a sexually explicit, surreptitiously recorded
16 video of Plaintiff topless at age 14 (made when Defendant was 20) on an adult entertainment
17 website. *Id.* ¶¶ 22, 48. On July 2, 2021, Plaintiff obtained a TRO from a California state court
18 (which expired on July 21, 2021) prohibiting Defendant from disseminating, showing, or
19 distributing any "private, intimate or sexually explicit photos" and granting temporary custody of
20 Plaintiff's daughter to Plaintiff. *Id.* ¶ 22; *see also* Dkt. No. 9 at 42–43 (court order). Defendant
21 continues to share the explicit video and has "personally and constructively" disseminated the
22 content on adult entertainment websites such as www.pornhub.com as recently as September 9,
23
24

2023.[1] Dkt. No. 8 ¶ 25. Plaintiff has been damaged in her reputation, personal relations, and business relations and prospects as a result of the dissemination of the video. *Id.* ¶ 26.

In April 2022, Defendant collaborated with Plaintiff's former attorney, Andrew George Watters, in creating a webpage hosted on Watters' law firm website. *Id.* ¶ 23. On the site, Defendant and Watters "sexually objectify" Plaintiff, publicly describe alleged sexual encounters, and claim that Plaintiff's professional publications are fake. *Id.*

**B.     Procedural History**

On October 19, 2023, Plaintiff filed the instant action. *See* Dkt. No. 1. In her Complaint (Dkt. No. 8), Plaintiff included a request for a TRO, which was struck as improper with leave to file a proper motion. Dkt. No. 16.

Plaintiff now brings that motion, seeking an *ex parte* TRO prohibiting Defendant, Defendant's agents, and parties in active concert or participation with them from: (1) "Absconding or constructively absconding with Plaintiff's minor daughter"; (2) "Disseminating and/or utilizing content depicting Plaintiff's likeness, Plaintiff's confidential information, or explicit recordings of Plaintiff"; and (3) "Hosting a website dedicated to 'shaming' Plaintiff on https://www.andrewwaters.com or elsewhere." Dkt. No. 26 ¶ 3.2; *see also id.* at 17–18 (proposed order).

## II.     LEGAL STANDARD

Any form of preliminary injunctive relief, including a TRO, is an extraordinary remedy that is "never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting the analysis for a TRO and a preliminary injunction are substantially

---

[1] Plaintiff also alleges that Defendant "has disseminated" two intimate images of herself. Dkt. No. 8 ¶ 34. However, Plaintiff does not allege when these photos were disseminated.

ORDER ON MOTION
FOR TEMPORARY
RESTRAINING ORDER - 3

identical), *overruled on other grounds by Winter*, 555 U.S. 7. The party seeking a TRO must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) the balance of equities tips in favor of the injunction; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20.

"All four [*Winter*] elements must be satisfied." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022); *see also Winter*, 555 U.S. at 20–22 (rejecting an approach that permitted mere "possibility" of irreparable harm if there is a strong likelihood of success on the merits). However, the Ninth Circuit permits a "sliding scale" approach as to the first and third factors: "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *see also Cottrell*, 632 F.3d at 1134–35 (holding that, after *Winter*, the "serious question" sliding scale survives in the Ninth Circuit, provided that the other two elements are also shown).

Further, courts are prohibited from issuing a TRO on an *ex parte* basis unless:

(A) specific facts in an affidavit or a verified complaint show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

"Because an *ex parte* order 'runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute,' the requirements of Rule 65(b)(1) must be scrupulously observed." *Fed. Trade Comm'n v. Loewen et al.*, No. C12-1207, Dkt. No. 7 at 4 (W.D. Wash. July 24, 2012) (quoting *Granny Goose Foods,*

*Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Loc. No. 70*, 415 U.S. 423, 438–39 (1974)). *Ex parte* TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods*, 415 U.S. at 438–39. This District's local rules further provide that *ex parte* TROs "are disfavored and will rarely be granted." LCR 65(b)(1).

### III.  DISCUSSION

As an initial matter, Plaintiff states that she made efforts to give notice to Defendant of her TRO application by email, phone, and mail. Dkt. No. 26 ¶ 2.2. Plaintiff also fears retaliation or harm to her daughter if further attempts are made. *Id.* Therefore, if Plaintiff can demonstrate immediate and irreparable harm before Defendant is heard, and can otherwise satisfy the *Winter* factors, the Court will grant the requested relief.

### A.  Absconding with Child

Plaintiff's request appears rooted in her claim of fraud (seventh action). Dkt. No. 8 ¶¶ 55–64. However, Plaintiff has not satisfied the *Winter* factors.

As an initial matter, Plaintiff mischaracterizes in her motion (Dkt. No. 26 ¶ 3.4) the July 2, 2021, order by a California state court granting "full custody" of Plaintiff's daughter to Plaintiff: the order was a TRO set to expire on July 21, 2021. Dkt. No. 9 at 35. Plaintiff thus does not demonstrate current, ongoing entitlement to custody of (or visitation with) her daughter.

Further, Plaintiff does not demonstrate a likelihood of irreparable harm. Plaintiff states in her motion that Defendant "directly or constructively moved Plaintiff's daughter to two different states in August 2023" and that Defendant is "interfering with Plaintiff's daughter's private school education." Dkt. No. 26 ¶ 3.3. Plaintiff also alleges that Defendant threatened in 2018 to "constructively abscond" with Plaintiff's daughter, albeit to an unstated location. Dkt. No. 8

¶ 18. But there is no plausible allegation that Defendant is preparing to leave the United States at this time for any reason, let alone with Plaintiff's daughter.²

Finally, the Court has serious doubts about whether it holds subject matter jurisdiction over this claim and other state-law claims related to child custody and parental rights. While Plaintiff alleges that Defendant distributed an intimate recording in violation of federal law, it is not clear that Plaintiff's child-related claims "are so related to" the federal claim "that they form part of the same case or controversy under Article III of the United States Constitution," such that the Court may hear them. 28 U.S.C. § 1367(a). With its jurisdiction seriously in question, the Court is not assured that it has authority to order relief.

For these reasons, Plaintiff's request is DENIED.

**B.   Distribution of Intimate Recordings**

Plaintiff's request appears rooted in her claims under the Wiretap Act (first action), 15 U.S.C. § 2520, and the Violence Against Women Act ("VAWA") Reauthorization Act of 2022 (second action), 15 U.S.C. § 6851, as to the distribution of an intimate recording of her as a child. However, Plaintiff has not satisfied the *Winter* factors.

Plaintiff does not demonstrate a likelihood of success on the merits, or even "serious questions" on the merits (assuming the balance of equities tips sharply in Plaintiff's favor). Plaintiff provides no documentary evidence that Defendant is the person or entity responsible for the September 9, 2023, distribution of the intimate recording. Moreover, Plaintiff appears to acknowledge her own uncertainty in her Complaint and motion. In her Complaint, she states that Defendant "personally *and constructively* disseminated" the recording on websites like

---

² The allegation is even more curious given that Plaintiff alleges Defendant used a fraudulent affidavit to *terminate* his own parental rights. Dkt. No. 8 ¶ 19.

Pornhub.³ Dkt. No. 8 ¶ 25 (emphasis added). And in her motion, she expresses even more uncertainty: "Defendant has, on three separate occasions since 2021, directly *or constructively* disseminated an explicit recording of Plaintiff at the age of 14." Dkt. No. 26 ¶ 3.8 (emphasis added). Courts have granted preliminary relief only upon a stronger evidentiary showing. *See, e.g.*, *Doe v. Sultan*, No. C23-667, 2023 WL 7027976, at *2 (W.D.N.C. Oct. 25, 2023) ("[Plaintiff's] evidence tends to show Defendant was the only person who possessed the intimate video posted on Facebook and emailed to her employer . . . ."); *see also Doe v. Spencer*, No. C23-02, 2023 WL 1484924, at *2 (M.D. Tenn. Feb. 2, 2023) ("Defendant does not deny that he sent intimate images of Plaintiff to various persons in Tennessee.").

The Court is sympathetic to Plaintiff's situation, and denial of a TRO is no comment on the ultimate merits of Plaintiff's case.⁴ But evidence of the recording's initial distribution is not the same as evidence that Defendant continues to distribute the recording, particularly after it has already been posted online and made available to anyone.

For these reasons, Plaintiff's request is DENIED.

**C.    Hosting of Website**

Plaintiff's request appears rooted in her claim of false light (sixth action). Dkt. No. 8 ¶¶ 51–54. However, Plaintiff has not satisfied the *Winter* factors.

Most significantly, Plaintiff does not demonstrate a likelihood of success on the merits, or even "serious questions" on the merits. Plaintiff alleges that the webpage in question is named for her former attorney, Andrew Watters, and is hosted on his law firm's website. *Id.* ¶ 23. It is thus unclear how Defendant is liable (and how the Court could order relief as to Defendant) for

---

³ In notable contrast, Plaintiff makes more concrete allegations regarding Defendant's *first* dissemination of the intimate recording in 2021, which was successfully removed by Plaintiff. *See* Dkt. No. 8 ¶¶ 22, 29.

⁴ Even if the TRO was granted, it would only be valid for 14 days, subject to a possible one-time extension for good cause shown. *See* Fed. R. Civ. P. 65(b)(2).

"hosting" the website. Plaintiff pleads only thin and conclusory allegations that Defendant "collaborated" with Watters or otherwise has been involved in creating or maintaining the website; there are no allegations of specific behavior or establishing a relationship between these two individuals. *See id.*; Dkt. No. 26 ¶ 3.10. While Plaintiff might be able to obtain preliminary relief in a different action against Watters himself, she is not entitled to preliminary relief here.

Moreover, contrary to Plaintiff's assertion in her motion (Dkt. No. 26 ¶ 3.10), a court in this District did *not* find that the statements on the subject website were untrue. Instead, the court merely dismissed a federal claim under a computer hacking statute and declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 11–16 (order). Further, a court order prohibiting the hosting of a website that "shames" Plaintiff likely implicates Defendant's First Amendment right of free speech and alters the balance of equities on this claim. Again, Plaintiff may have a separate claim against Watters and Defendant if the claims are untrue, but that claim would need to be brought in a different action.

For these reasons, Plaintiff's request is DENIED.

### IV.    CONCLUSION

Accordingly, Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause (Dkt. No. 26) is DENIED.

Dated this 21st day of December 2023.

Tana Lin
United States District Judge